UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLEBBER A. BEZERRA,

                    Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

CIVIL ACTION NO.: 20 Civ. 4303 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff Klebber A. Bezerra ("Mr. Bezerra") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g).  (ECF No. 1).  He seeks review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying his September 2015 application for Disability Insurance Benefits ("DIB") under the Act.  (Id.)  Mr. Bezerra contends that the decision of the Administrative Law Judge ("ALJ"), dated August 17, 2018 (the "ALJ Decision"), was "erroneous, not supported by substantial evidence in the record, and/or contrary to law," and asks the Court to grant him the monthly maximum insurance benefits or, in the alternative, to remand for a new hearing to reconsider the evidence.  (Id. ¶¶ 7, 10; Wherefore Clause (c)).

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On March 11, 2021, Mr. Bezerra filed his motion for judgment on the pleadings (ECF No. 24) ("Mr. Bezerra's Motion"), on July 1, 2021, the Commissioner cross-moved (ECF No. 30) (the "Commissioner's Motion", together with Mr. Bezerra's Motion, the "Motions")),

and on July 22, 2021, Mr. Bezerra filed his reply (the "Reply" (ECF No. 32)).  For the reasons set

forth below, Mr. Bezerra's Motion is DENIED and the Commissioner's Motion is GRANTED.

## II.     BACKGROUND

### A.  Procedural History

On September 22, 2015, Mr. Bezerra filed an application for DIB,[1] claiming he had been

unable to work since September 24, 2013 (the "Onset Date") due to work-related injuries to his

shoulders, back, hips, right foot, and right ankle.  (SSA Administrative Record ("R.") 37, 59–60

(ECF Nos. 19–19-3)).  On December 17, 2015, the SSA denied Ms. Bezerra's application, finding

that he was not disabled.  (R. 68–69).  On April 7, 2016, Mr. Bezerra requested a hearing before

an ALJ.  (R. 89–90).  On June 26, 2018, he appeared before ALJ JuanCarlos Hunt for an evidentiary

hearing (the "Hearing").  (R. 27–58).  A vocational expert ("VE") also testified.  (R. 50–55).

On August 17, 2018, ALJ Hunt found that Mr. Bezerra was not disabled under the Act.

(R. 11–25).  Although he found that Mr. Bezerra had three severe impairments—degenerative

joint disease of the shoulder and hip, and degenerative disc disease—ALJ Hunt concluded that

the severity of these impairments did not meet or medically equal the requisite criteria for finding

a disability, and that Mr. Bezerra had the residual functional capacity ("RFC") to perform past

relevant work.  (R. 14–22).  On October 2, 2018, Mr. Bezerra filed a request with the SSA Appeals

---

[1] To quality for DIB, one must be both disabled and insured for benefits.  42 U.S.C. § 423(a)(1)(A); 20 C.F.R.
§§ 404.120, 404.315(a).  The last date a person meets the insurance requirement is the date by which the
claimant must establish a disability.  Mr. Bezerra met the insurance requirements through December 31,
2019 (R. 59), and thus his disability must have begun on or before that date to quality for DIB.  The Court
notes that, "[a]t the [H]earing, Mr. Bezerra requested that the ALJ consider a closed period of disability
from September 24, 2013 to August 30, 2017."  (ECF No. 25 at 6 (citing R. 11; see R. 33–34, 249).

Council for review of the ALJ Decision.  (R. 188–90; see R. 248–50).  On April 6, 2020, the Appeals Council denied Mr. Bezerra's request.  (R. 1–5).

On June 5, 2020, Mr. Bezerra filed a Complaint in this Court challenging the ALJ Decision. (ECF No. 1).  In his Motion, Mr. Bezerra argues that ALJ Hunt "failed to properly apply the treating physician rule."  (ECF No. 25 at 14–18 (capitalization omitted)).[2]  The Commissioner argues that the ALJ Decision "is legally correct and supported by substantial evidence."  (ECF No. 31 at 20–29 (capitalization omitted)).

### B.  Factual Background

#### 1.  Non-medical evidence

Mr. Bezerra was born in 1975 and was 37 years old on the Onset Date.  (R. 59).  He has a high school education and is right-handed.  (R. 35–37).  Mr. Bezerra worked as a hotel receptionist from 1999 to 2003, and as a waiter from 2004 to 2007.  (R. 202; see R. 38–39).  In 2008, Mr. Bezerra began working as a flight attendant for Delta.  (R. 38).

#### 2.  Medical evidence

Mr. Bezerra and the Commissioner have both provided largely consistent summaries of the medical evidence in the Record.  (See ECF Nos. 25 at 7–11; 31 at 7–19).  Accordingly, the Court adopts the parties' summaries of the medical evidence as accurate and complete, and references the pertinent Record evidence for purposes of analyzing the Motions. (See infra § III.B.1–3).

---

[2] Page numbers in citations to non-Record ECF filings refer to the ECF page number.

C.  **Administrative Proceedings**

1.  **Hearing before the ALJ**

On June 26, 2018, Mr. Bezerra was represented by counsel at the Hearing before ALJ Hunt.  (R. 27–58).

Mr. Bezerra testified that, in September 2013, while working as a flight attendant, he was injured when two beverage carts "crushed [him] against the cockpit door and the galley counter." (R. 37, 40).  Mr. Bezerra was further injured when he "stowed [the carts] in the proper way," causing "injury to [his] groin, [his] right foot, ankle and knee and both hands, both shoulders, and [his] back."  (R. 40).  Mr. Bezerra confirmed that he had surgery on his hip in April 2016, after which he was on crutches for six weeks and then "used a small cane for two more weeks after the crutches."  (R. 40, 45–46).  He said he was prescribed "Percocet and then Tramadol," but, within six months of the surgery, he "didn't have to take medication" and did so "only when it was extremely painful."  (R. 46).[3]  He testified that he "had a second surgery on [his] left hip, which showed some improvement," and that "physical therapy to that specific area" had "allowed [him] to walk again properly."  (R. 41).[4]  Mr. Bezerra confirmed that "[a]ll of [his] treatment [was] through New York Worker's Compensation."  (R. 41).  He also confirmed that, as of the date of the Hearing, he was "cleared to return to work" and was "planning on going back as a flight attendant."  (R. 42).  When asked if Delta had "rehired" him, Mr. Bezerra responded, "I never lost my job," and confirmed that "Delta [was] putting [him] back on schedule."  (R. 42).

---

[3] "Tramadol is an opiate analgesic used to relieve moderate to moderately severe pain."  McIntosh v. Berryhill, No. 17 Civ. 5403 (ER) (DF), 2018 WL 4376417, at *5 (S.D.N.Y. July 16, 2018).
[4] Mr. Bezerra's medical records show that he underwent a second arthroscopic surgery on his left hip on February 23, 2018.  (R. 744).

When asked to describe what "a typical day" was like for him "in the middle of 2017," Mr. Bezerra said he "had to deal with severe pain" but was able to cook for himself, shop for groceries, and had no trouble taking public transit to and from his medical appointments. (R. 44–45). He said he was unable to "practice any sport" and that he did not "ride bikes," "roller skate," or "take long walks," and that he would spend his days at "home reading and studying and trying to watch videos that Delta demands us to watch when we are getting ready to go back to work." (R. 46–47).

Mr. Bezerra's attorney asked him to explain why, during the relevant time period, he was unable to perform work "where [he was] seated at a desk." (R. 43). Mr. Bezerra said, "because of [his] condition, it is very hard for [him] to remain seated or stand up for a long time" and that he did not "know what kind of job that [sic] could accommodate that." (R. 43). When asked if he "ever consider[ed] a lighter duty job" at Delta, Mr. Bezerra said, "I would, but then still I liked this job" and "it was a position that would accommodate me." (R. 47). Counsel then asked Mr. Bezerra whether, "[i]n the middle of 2016 or six months after [his first] hip surgery," he could have performed "the job where someone sits behind a desk in an airport and answers questions to the customers, saying the flight is delayed, [or] you're in terminal 6 . . . ." (R. 47). Mr. Bezerra responded, "I don't know, I think I could, if there [sic] would not be mandatory to just remain seated or standing up." (R. 47). Mr. Bezerra estimated that he needed to "go from sitting to standing" roughly every 20 to 30 minutes. (R. 48).

Regarding his left shoulder impairment during the relevant time period, Mr. Bezerra testified that he would have "difficulties" when "lifting extremely heavy object[s]." (R. 48).

A VE, Bassey A. Duke, also testified at the Hearing.  (R. 50–55).  Mr. Duke classified Mr. Bezerra's past work as: (i) waiter (Dictionary of Occupational Titles ("DOT") code 311.477-030), a "light work" category position; (ii) flight attendant (DOT code 352.367-010, a "medium work" category position; and (ii) receptionist (DOT code 237.367-038), a "sedentary work" category position.  (R. 53).  The ALJ then asked Mr. Bassey to "assume a hypothetical person [with] the same work experience, age, education and professional profile" of Mr. Bezerra and who "can perform sedentary work, except [for] the following limitations: occasionally can kneel, stoop, crouch, crawl and climb ramps, stairs, ladders and scaffolds; [and] frequently can push and pull and reach overhead with the left upper extremity."  (R 53–54).  Mr. Bassey confirmed that such a person could perform Mr. Bezerra's past work as a receptionist.  (R. 54).  The ALJ then asked whether the same person could perform the job of receptionist with the following additional limitations: "occasionally can push and pull and reach overhead with the left upper extremity; [and] needs to alternate between sitting and standing every hour during which time can remain on task."  The VE confirmed a person with these physical limitations could perform the job of receptionist.  (R. 54).  As a third hypothetical, the ALJ added one additional limitation—"the person needs to alternate between sitting and standing every 30 minutes during which time [he] will be off task [for] five minutes an hour"—and asked whether such a person could perform the job of receptionist.  (R. 54).  Mr. Bassey opined that a person with these limitations could not perform the job of receptionist, because "[b]eing off task at least five minutes each hour" would "be excessive." (R. 54).  Mr. Bassey clarified that a person who needs to alternate between sitting and standing every 30 minutes could perform the job of receptionist, provided they could remain on task during that time.  (R. 55).

### 2. **The ALJ Decision**

On August 17, 2018, ALJ Hunt denied Mr. Bezerra's application for DIB benefits.  (R. 11–25).  "After careful consideration of all of the evidence," ALJ Hunt concluded that Mr. Bezerra "has not been under a disability, as defined in the Social Security Act, from September 24, 2013 to August 30, 2017."  (R. 12, 22).

ALJ Hunt followed the five-step disability determination process.  As a preliminary matter, ALJ Hunt found that Mr. Bezerra met the insured status requirements for his DIB application through December 31, 2019.  (R. 13).  At step one, the ALJ found that Mr. Bezerra had not engaged in substantial gainful activity since his alleged Onset Date of September 24, 2013.  (Id.) At step two, the ALJ found that Mr. Bezerra had three severe impairments: (i) degenerative joint disease of the shoulder; (ii) degenerative joint disease of the hip; and (iii) degenerative disc disease.  (R. 14–15).

At step three, the ALJ determined that Mr. Bezerra did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in the Act.  (R. 16).  (The impairments listed in 20 C.F.R. Appendix 1, Subpart P, Part 404 are known as the "Listings").  ALJ Hunt specifically determined that Mr. Bezerra's impairments did not meet Listings 1.02 (major joint dysfunction) and 1.04 (disorders of the spine) because Mr. Bezerra "neither established that he is unable to ambulate effectively, nor established that he is unable to perform fine and gross movements effectively."  (R. 16).[5]

---

[5] Listings 1.02 and 1.04 were eliminated as of April 2, 2021.  See 20 C.F.R. Appendix 1, Subpart P, Part 404. Because they were in effect at the time of the ALJ's Decision, however, those Listings still control for purposes of the Court's analysis.  See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying Listing "in effect when the ALJ adjudicated [the challenged] disability claim"); Kiser v. Saul, 821 F. App'x 211, 213 n.1 (4th Cir. 2020) ("the version of the listings in effect as of the date of the Commissioner's final

ALJ Hunt then assessed Mr. Bezerra's RFC as being able "to perform sedentary work as defined in 20 CFR 404.1567(a)," subject to several limitations.  (R. 16–21).  Specifically, the ALJ found Mr. Bezerra: (i) "occasionally can kneel, stoop, crouch, crawl, and climb ramps, stairs, ladders, and scaffolds;" (ii) "occasionally can push, pull, and reach overhead with his left upper extremity;" and (iii) "needs to alternate between standing and sitting every 30 minutes, during which time he can remain on-task."  (Id.)

In determining the RFC, the ALJ evaluated and summarized the medical records and considered the opinions of several treating and consultative sources.  (R. 17–21).  ALJ Hunt accorded "some weight" to the opinions of Ram Ravi, M.D., and Haruyo Fukiwaki, Ph.D, both of whom performed consultative examinations of Mr. Bezerra on December 14, 2015.  (R. 19–20; see R. 381–90).  Specifically, the ALJ considered Dr. Ravi's opinion that Mr. Bezerra: (i) had no limitations with sitting or standing; (ii) had moderate limitations with bending, pushing, pulling, lifting, and carrying; and (iii) should avoid squatting.  (R. 19 (citing R. 382–85)). The ALJ considered Dr. Fujiwaki's opinion that Mr. Bezerra "can learn new tasks, perform certain complex tasks independently, make appropriate decisions, relate adequately with others, and is mildly limited in appropriately dealing with stress."  (R. 19–20 (citing R. 387–90)).  In according only some weight to these opinions, the ALJ reasoned:

> The opinions of Dr. Ravi and Dr. Fujiwaki are generally consistent with the medical evidence in the record.  In addition, they are specialists, who are knowledgeable about the Social Security Administration program, and they had the opportunity to examine [Mr. Bezerra]. However, their opinions were based on a one-time examination and they did not have a longitudinal relationship with [Mr. Bezerra].

decision controls."); Distefano v. Berryhill, 363 F. Supp. 3d 453, 466 n.5 (S.D.N.Y. 2019) ("Although the listings have since been revised, [courts] apply the listings that were in effect at the time the ALJ rendered his decision.").

(R. 20).

ALJ Hunt also accorded "some weight" to the opinions of Manuel A. Ceja, M.D., Teresa Habacker, M.D., Richard M. Seldes, M.D., Sounder Eswar, M.D., and Jonathan D. Glassman, M.D. (R. 20). In particular, the ALJ considered: (i) Dr. Ceja's August 29, 2013 opinion that Mr. Bezerra "can work with no heavy lifting, twisting of the back, bending over, and limited upper extremity activities" (R. 20 (citing R. 399, 403)); (ii) Dr. Eswar's December 17, 2013 opinion that Mr. Bezerra "can perform light duty work or can return to work [as a flight attendant] with no repetitive overhead activities and no pushing, pulling, or heavy lifting of more than 40 pounds" (R. 20 (citing R. 335)); (iii) Dr. Habacker's March 24, 2014 opinion that Mr. Bezerra "does not demonstrate any disability and may resume normal daily living activities and regular work duties without restrictions" (R. 20 (citing R. 322)); (iv) Dr. Glassman's October 21, 2015 opinion that Mr. Bezerra "has no disability with regard to his shoulders and left knee and can return to work without restrictions" (R. 20 (citing R. 329)); (v) Dr. Glassman's August 24, 2016 opinion that Mr. Bezerra "can return to work with no squatting greater than 70 degrees and no unilateral lifting of the left upper extremity greater than 20 pounds" (R. 20 (citing R. 629)); (vi) Dr. Glassman's August 23, 2017 opinion that Mr. Bezerra "is capable of working and performing activities of daily living with restrictions and limitations with no squatting greater than 90 degrees and no elevation of the left shoulder greater than 130 degrees" (R. 20 (citing R. 678)); and (vii) Dr. Seldes' June 13, 2018 opinion that Mr. Bezerra was "able to return to work as of August 7, 2018 with no restrictions" (R. 20 (citing R. 709)). In weighing these opinions, the ALJ reasoned:

> Some weight is assigned to the opinions of these physicians as they had an opportunity to examine [Mr. Bezerra], [and] their opinions regarding [Mr. Bezerra]'s limitations are generally supported by their examination and the medical evidence of record. However, these opinions apply New York Worker's

Compensation standards, which are not necessarily consistent with the Social Security Administration program. Thus, only some weight is appropriate. Additionally, whether [Mr. Bezerra] can or cannot work, infringes on an issue reserved to the Commissioner; therefore, such opinions are given little weight.

(R. 20).

The ALJ also accorded "little weight" to "treating and examining sources providing percentages between 25% and 100% and claims of total or partial disability under Worker's Compensation" and to "statements indicating that [Mr. Bezerra] is temporarily total [sic] or partially disabled." (R. 20) (citations omitted). In doing so, ALJ Hunt reasoned:

> The disability determination processes utilized by the New York Worker's Compensation Program and the Social Security Administration are fundamentally different. The New York Worker's Compensation does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity), or determine whether the claimant is capable of performing either his past relevant work or other work that exist [sic] in significant numbers in the national economy as required by the Regulations. Thus, a disability rating in accordance with the New York Worker's Compensation Guideline is of little probative value in these proceedings. Furthermore, administrative findings of disability are reserved to the Commissioner, and as such are not entitled to any special significant weight.

(R. 20–21).

At step four, the ALJ found Mr. Bezerra has past relevant work as a flight attendant, receptionist, and waiter, and that, "after a review of the evidence and a comparison of the physical and mental demands of this past relevant work to the residual functional capacity, [the ALJ] concur[red] with the testimony of the [VE] and [found] that [Mr. Bezerra can perform past relevant work as a receptionist, as actually or generally performed." (R. 21). Accordingly, the ALJ determined that Mr. Bezerra was not disabled "from September 24, 2013 to August 30, 2017." (R. 22).

### 3. The Appeals Council Decision

On October 2, 2018, Mr. Bezerra asked the SSA Appeals Council to review the ALJ Decision. (R. 188–90; see R. 248–50). On April 6, 2020, the Appeals Council informed Mr. Bezerra that it "found no reason" to review the ALJ Decision, and denied his request. (R. 1–5).

### III.   DISCUSSION

### A. Applicable Legal Standards

### 1. Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if she establishes that no material facts are in dispute and that she is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008). Second, the Court must decide whether the ALJ's decision was supported by substantial evidence. Id. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ.

5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009).  To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity."  Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  20 C.F.R. §§ 404.1520b, 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2.  Standards for benefit eligibility

For purposes of DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(3)(B).  In reviewing a claim

of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v) and 20 C.F.R. § 416.920(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-

Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. **The Treating Physician Rule**[6]

The regulations require the ALJ to give "controlling weight" to "the opinion of a claimant's treating physician as to the nature and severity of the impairment . . . so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" (the "Treating Physician Rule"). Burgess, 537 F.3d at 128 (internal citation omitted); accord Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 426 (S.D.N.Y. 2010). "This preference is generally justified because treating sources are likely to be 'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's medical impairments and offer a unique perspective that the medical tests and SSA consultants are unable to obtain or communicate." Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927([c])(2)); see 20 C.F.R. § 404.1527.

If the ALJ determines that a treating physician's opinion is not controlling, he or she is nevertheless required to consider the following factors, known as the "Burgess factors," in determining the weight to be given to that opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3)

---

[6] The Court notes that "[i]n March 2017, the Social Security Administration published regulations that effectively abolished the Treating Physician Rule for claims filed on or after March 27, 2017." Dorta v. Saul, No. 19 Civ. 2215 (JGK) (RWL), 2020 WL 6269833, at *3 n.8 (S.D.N.Y. Oct. 26, 2020). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Mr. Bezerra filed his claim in September 2015 (R. 59), the Treating Physician Rule applies.

the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c); 416.927(c).  The ALJ must give "good reasons" for not crediting the plaintiff's treating physician.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (explaining that Appeals Council had "an obligation to explain" the weight it gave to the opinions of the non-treating physicians).  After considering these factors, the ALJ must fully set forth his reasons for the weight assigned to the treating physician's opinion. Burgess, 537 F.3d at 129.  "[T]he 'failure to explicitly apply the Burgess factors when assigning weight [to a treating physician's opinion] is a procedural error,' and unless the ALJ has 'otherwise provided good reasons for its weight assignment, [the Court will be] unable to conclude that the error was harmless and [will] consequently remand for the ALJ to comprehensively set forth its reasons.'"  Ferraro v. Saul, 806 F. Appx. 13, 14–15 (2d Cir. 2020) (summary order) (quoting Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019)).  "If, however, 'a searching review of the record' assures [the Court] 'that the substance of the treating physician rule was not traversed,' [the Court] will affirm" the ALJ's decision.  Estrella, 925 F.3d at 96 (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

While the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  See also Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Cabreja v. Colvin, No. 14 Civ. 4658 (VSB),

2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (explaining that opinions of one-time consultants should not overrule those provided by the treating medical providers' opinions unless there are "serious errors" in the latter).   Failing to apply proper weight to a treating physician's opinion is reversible error.   Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015).

    **B.   Evaluation of the ALJ's Decision**

        **1.   Mr. Bezerra's arguments**

Mr. Bezerra raises a single challenge to the ALJ Decision, arguing that "the ALJ failed to properly apply the treating physician rule."   (ECF. No 25 at 14–18) (capitalization omitted). Specifically, he argues that ALJ Hunt "disregarded the opinions" of three treating physicians—Dr. Seldes, Dr. Ceja, and Tim Canty, M.D.—"without providing the necessary good reasons to give their opinions less than controlling weight."   (Id. at 18).

Regarding Drs. Seldes and Ceja, Mr. Bezerra argues that the ALJ erred by failing to address the Burgess factors in weighing their opinions.   Specifically, he notes that ALJ Hunt did not "discuss how frequently Drs. Ceja and Seldes treated Mr. Bezerra, the length of the treatment relationship, and the fact that Dr. Seldes performed three surgeries on Mr. Bezerra," and that "the ALJ's decision contains no evaluation as to whether Drs. Ceja and Seldes' opinions were supported by medically acceptable clinical and laboratory diagnostic techniques, or were inconsistent with other substantial evidence in the record."   (ECF No. 25 at 16).   He also notes that, despite treating with these physicians "on an almost monthly basis from 2013 through 2018," the ALJ Decision "does not even identify Drs. Ceja and Seldes as treating physicians."   (Id.) In arguing that the ALJ misapplied the Treating Physician Rule as to Drs. Seldes and Ceja, Mr.

Bezerra does not specify which medical opinion the ALJ failed to properly weigh, nor does he articulate how any such opinion contradicts the ALJ Decision.

As to Dr. Canty, Mr. Bezerra argues that the ALJ erred by failing "to consider and give any weight to" his opinion that Mr. Bezerra is "totally disabled." (ECF No. 25 at 16). Mr. Bezerra notes that "the ALJ's decision fails to even mention that Mr. Bezerra was treated by pain management specialist Dr. [] Canty beginning in November 2013." (Id. at 15). He also notes that "Dr. Canty administered steroid injections in Mr. Bezerra's shoulder and back and he prescribed Tramadol." (Id. at 15–16). In a footnote, Mr. Bezerra claims that "[i]t is not clear how long Dr. Canty treated [him]." (Id. at 16 n.3). He further claims that the Record "only includes two treatment records from Dr. Canty, which appear in Dr. Seldes' office treatment records, and suggests that the Record "is likely missing additional treatment records from Dr. Canty." (Id. (citing R. 477, 479)).

## 2. **The Commissioner's arguments**

The Commissioner argues that the ALJ Decision was legally correct and supported by substantial evidence. (ECF No. 31 at 20–29).

Regarding Drs. Seldes and Ceja, the Commissioner argues that their assessments of Mr. Bezerra's disability for Workers' Compensation purposes "do not constitute medical opinions under the regulations" and, thus, were "not entitled to any weight, let alone controlling weight," and that the ALJ was not required to consider the Burgess factors in weighing them. (ECF No. 31 at 21–22 (citing 20 C.F.R. § 401.1527(d)).

The Commissioner notes that the ALJ considered "[t]he only assessment by a treating doctor that adduced particular limitations, rather than a conclusory assessment of disability,"

i.e., "Dr. Ceja's notations, accompanying his first two examinations of [Mr. Bezerra], on August 29, 2013, and September 4, 2013, that [Mr. Bezerra] could return to his job as long as he was restricted from heavy lifting, twisting of the back, bending over, and to limited upper extremity activities," and that Dr. Ceja's assessment "is essentially consistent with the RFC for a limited range of sedentary work, as well as the demands of the specific sedentary job of receptionist." (ECF No. 31 at 23–24 (citing R. 16, 20, 399, 403)). The Commissioner concedes that the ALJ did not "apply the regulatory [Burgess] factors to the[se] assessed limitations," but argues that the ALJ Decision "makes clear that the ALJ considered the limitations in formulating the RFC," and that "there is no reasonable likelihood that a different outcome would have resulted had the ALJ accorded greater weight to Dr. Ceja's opinion." (ECF No. 31 at 24).

As to Dr. Canty, the Commissioner argues he "did not render any opinion, or even any assessment of disability" that the ALJ could have weighed. (ECF No. 31 at 23). The Commissioner disputes Mr. Bezerra's claim that Dr. Canty opined in his November 19, 2013 treatment notes that he was "totally disabled." (Id. (citing ECF No. 25 at 16)). The Commissioner notes that Dr. Canty only referenced in his recitation of Mr. Bezerra's medical history Mr. Bezerra's "100%" disability, and that "[t]he portion of the notes reflecting Dr. Canty's own examination findings and diagnoses contain no assessment of disability." (Id. (citing R. 444)).

Finally, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence. (ECF No. 31 at 25–29). In particular, the Commissioner argues that the RFC determination is supported by: (i) the records of Mr. Bezerra's treating providers, including Drs. Ceja, Seldes, and Canty; (ii) "the reports of the three doctors who examined [Mr. Bezerra], and reviewed [his] treatment records, for Workers' Compensation purposes;" and (iii) "the findings

and opinion of the consultative examiner who examined [Mr. Bezerra] for purposes of his entitlement to Social Security benefits."  (Id. at 26–28).

### 3.   The Treating Physician Rule applied

For the reasons set forth below, the Court agrees with the Commissioner that the ALJ Decision satisfies the Treating Physician Rule and is supported by substantial evidence.

### a.   Drs. Seldes and Ceja

The Court concludes the ALJ properly weighed the opinions of Dr. Seldes and Dr. Ceja, neither of whom offered a "medical opinion" entitled to controlling weight under the Treating Physician Rule.  And even though the ALJ did not explicitly consider the Burgess factors in weighing their opinions that Mr. Bezerra was "disabled," a searching review of the Record has assured the Court that ALJ Hunt complied with the substance of the Treating Physician Rule.

The SSA defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the patient's] impairment(s), including [the patient's] symptoms, diagnosis and prognosis, what [the patient] can still do despite impairment(s), and [the patient's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), § 416.927(a)(2).  "The results of objective tests, including any clinical or diagnostic techniques, are not medical opinions."  Bailey v. Berryhill, No. 15 Civ. 9287 (LTS) (RLE), 2017 WL 1102671, at *2 (S.D.N.Y. Mar. 24, 2017) (citation and internal quotation omitted).  Similarly, "a doctor's opinion that a claimant is 'disabled' (particularly for purposes of a different statute) is not controlling," Johnson v. Comm'r of Soc. Sec., No. 17 Civ. 5598 (BCM), 2018 WL 3650162, at *16 (S.D.N.Y. July 31, 2018), aff'd, 776 F. App'x 744 (2d Cir. 2019), since such statements "are not medical opinions," but rather "opinions on issues reserved to the Commissioner."  20 C.F.R.

§§ 404.1527(d), 416.927(d).  "[A] medical opinion must reflect a judgment 'with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of symptoms.'"  Bailey, 2017 WL 1102671, at *2 (quoting Merriman v. Comm'r of Soc. Sec., No. 14 Civ. 3510 (PGG) (HBP), 2015 WL 5472934, at *20 (S.D.N.Y. Sept. 17, 2015)).

At various times during the relevant period, both Dr. Seldes and Dr. Ceja opined that Mr. Bezerra was "disabled" to some degree. (See e.g., R. 292, 296, 297, 300, 302, 303, 312, 368, 352, 514, 543, 545, 553, 589, 592, 600, 606, 620, 658, 661, 664, 667, 718, 734, 735, (Dr. Seldes); R. 418, 487, 489, 528, 530, 532, 571, 596, 636 (Dr. Ceja)).  As the ALJ correctly found, however, these "opinions," offered in the context of Mr. Bezerra's Workers' Compensation claim, are "of little probative value in these proceedings."  (R. 20).  As ALJ Hunt articulated, "[t]he disability determination processes utilized by the New York Worker's Compensation Program and the Social Security Administration are fundamentally different[,]" as the former "does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity), or determine whether the claimant is capable of performing either his past relevant work or other work that exist in significant numbers in the national economy as required by the Regulations."  (R. 20).  As discussed above, these statements do not constitute a "medical opinion" under the SSA's regulations and, thus, are "not give[n] any special significance."  20 C.F.R. §§ 404.1527(d), § 416.927(d).  Accordingly, ALJ Hunt's decision to accord these opinions "little weight" was justified.  (R. 20).

The Court notes that several of Dr. Seldes' records (see e.g., R. 291–303, 310–12, 352, 514, 543, 545, 553, 589, 592, 600, 606, 620, 658, 661, 664, 667, 718, 734, 735,) and some of Dr. Ceja's records (see e.g., R. 419–20, 488–89, 529–30) also include notes regarding the results of

their physical examinations of Mr. Bezerra.  As discussed above, these records also "are not medical opinions."  Bailey, 2017 WL 1102671, at *2 (finding that "treatment notes documenting [the] Plaintiff's medical history, describing the results of examinations and medical tests, and describing treatments and treatment plans" were not "medical opinions" because, while they "state[d] diagnoses and describe[d] symptoms," they did "not state any conclusions regarding [the] Plaintiff's resultant limitations.").  These records do not reflect any function-by-function analysis and, as a result, were not entitled to controlling weight under the Treating Physician Rule.  See Castorina v. Saul, No. 19 Civ. 991 (AJN) (BCM), 2020 WL 6688961, at *19 (S.D.N.Y. Aug. 24, 2020) (affirming ALJ's decision to give little weight to a treating physician who "saw [the] plaintiff regularly for approximately 15 months, . . . [but] did not undertake any function-by-function analysis, [and] merely conclude[ed], at the end of some of his treatment notes, that [the] plaintiff had a 'total' disability") adopted, 2020 WL 6781078 (S.D.N.Y. Nov. 18, 2020); Johnson, 2018 WL 3650162, at *16 (S.D.N.Y. July 31, 2018).

Mr. Bezerra's argument that remand is warranted because ALJ Hunt did not evaluate Drs. Seldes' and Ceja's opinions as to his disability using the Burgess factors is unavailing.  As an initial matter, "because [Drs. Seldes' and Ceja's] statements in this regard were ultimate-issue opinions pertaining solely to an outside agency's disability determination, the ALJ was under no additional obligation to weigh the statements according to the Commissioner's regulatory factors and set forth good reasons for not doing so."  Smith v. Colvin, No. 14 Civ. 5868 (ADS), 2016 WL 5395841, at *20 (E.D.N.Y. Sept. 27, 2016);  see also Bartko v. Comm'r of Soc. Sec., No. 13 Civ. 373 (GLS) (ESH), 2014 WL 4973158, at *8 (N.D.N.Y. Sept. 30, 2014) ("Application of the six regulatory factors to an ultimate-issue opinion would be awkward at best.").

In any event, although ALJ Hunt did not explicitly list the Burgess factors in weighing these opinions, the Court's searching review of the record reveals adequate support for his decision to accord these opinions little weight.  Drs. Seldes' and Ceja's findings of "total" or "100%" disability were inconsistent with substantial Record evidence, including their own records, Mr. Bezerra's own reports of his daily activities and limitations, and the findings of several consultative examiners.  For example, as ALJ Hunt noted, Dr. Ceja's records show that, at various times during the relevant period, Mr. Bezerra exhibited a normal gait, normal motor function, full strength in his upper extremities, a full range of motion in his left shoulder, and intact sensation.  (See R. 17–19 (citing R. 398, 402, 420, 488–89, 529, 597, 635, 703); see also R. 639–40, 701–02, 705–06). Similarly, and as the ALJ Decision also reflects, Dr. Seldes noted throughout the relevant period that, despite some continuing pain and stiffness, Mr. Bezerra's left shoulder and hip impairments generally improved with physical therapy, medication, and surgery.  (See R. 17–19 (citing R. 303, 297, 526, 545, 558, 600, 606); see also R. 293–94, 299, 303, 589, 592, 603, 620).  The Record also demonstrates that, during the relevant period, Mr. Bezerra was able to cook for himself and shop for groceries, and had no trouble taking public transit to and from his medical appointments.  (R. 44–45).  Mr. Bezerra also believed that, "[i]n the middle of 2016 or six months after [his first] hip surgery," he could have performed a sedentary-work job as long as it was not "mandatory to just remain seated or standing up."  (R. 47).

In addition, the opinions of total disability are belied by the findings of several consultative examiners.  In December 2013, Dr. Eswar observed a normal gait and normal ranges of motion in Mr. Bezerra's hips, knees, and right shoulder, and opined that Mr. Bezerra was "capable of working" subject to the restrictions of "no repetitive overhead activities, no

pushing[,] puling and heavy lifting no more than 40 lbs."  (R. 333–35).  In March 2014, Dr. Habacker observed normal ambulation and normal range of motion and muscle strength in Mr. Bezerra's cervical spine, hips, knees, ankles, and feet, and opined that Mr. Bezerra was capable of resuming "normal daily living activities" and "regular work duties without restrictions."  (R. 320–22).  In October 2015, Dr. Glassman observed a normal gait, normal range of motion and muscle strength in Mr. Bezerra's shoulders, knees, and hips, and opined that, "[w]ith regard to both shoulders and the left knee, the examinee can return to work without restrictions." (R. 326–29).  Dr. Glassman made similar findings in in August 2016, and opined that Mr. Bezerra was "capable of working with restrictions/limitations of no squatting greater than 70 degrees and no unilateral lifting with the left upper extremity greater than 20 pounds."  (R. 626–30).  In August 2017, Dr. Glassman again opined that Mr. Bezerra was capable of working" subject to certain limitations, specifically "no squatting greater than 90 degrees and no elevation of the left shoulder greater than 130 degrees."  (R. 678).  And Dr. Ravi, who examined Mr. Bezerra in December 2015, observed a normal gait and full range of motion in Mr. Bezerra's cervical spine and shoulders, and opined that Mr. Bezerra had "no limitation to sitting and standing," "moderate limitation to bending, pushing, pulling, lifting, and carrying," and "should avoid squatting."  (R. 383–85).  Accordingly, the Record supports ALJ Hunt's decision to accord little weight to Drs. Seldes' and Ceja's opinions as to Mr. Bezerra's disability.

Finally, although Dr. Ceja opined in August 2013 that Mr. Bezerra was limited to "no heavy lifting, twisting of the back, [or] bending over, [and to] limited [upper extremity] activities" (R. 399), the Court notes that this opinion was not entitled to controlling weight because Dr. Ceja was not yet Mr. Bezerra's treating physician at the time.  The Record reflects that Dr. Ceja made

this assessment at his "initial evaluation" of Mr. Bezerra after a single examination, and repeated it at a follow-up evaluation on September 4, 2013.  (R. 398–99, 402–03).  "[S]uch limited interaction is typically insufficient, without more, to establish a treating physician relationship." Cooper v. Saul, 444 F. Supp. 3d 565, 582 (S.D.N.Y. 2020) (collecting cases); see Castorina, 2020 WL 6688961, at *18 (opinions of doctor who evaluated the plaintiff twice "were not entitled to controlling weight, because [the doctor] was not yet [the] plaintiff's treating physician"); Pena Lebron v. Comm'r of Soc. Sec., 2019 WL 1429558, at *16 (S.D.N.Y. Mar. 29, 2019) ("A physician who has examined a claimant only once or twice is generally not afforded the weight due a treating physician."); Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (opinion of physician "who only examined [the plaintiff] once or twice" was "not entitled to the extra weight of that of a 'treating physician'").  In any event, ALJ Hunt considered this opinion when making his RFC determination (R. 20 (citing R. 399, 403)).  Moreover, Mr. Bezerra does not specify—and the Court fails to see—how Dr. Ceja's assessed limitations contradict or otherwise undermine the ALJ Decision.  Accordingly, the Court is confident "that remand would not result in a different conclusion on residual functional capacity or disability."  Bachety v. Comm'r of Soc. Sec., No. 19 Civ. 5239 (BMC), 2021 WL 371583, at *4 (E.D.N.Y. Feb. 3, 2021).

### b.    Dr. Canty

The Court concludes that the ALJ did not violate the Treating Physician Rule with respect to Dr. Canty's opinion as to Mr. Bezerra's disability.

As an initial matter, contrary to Mr. Bezerra's assertion, the ALJ did not "fail[] to consider and give any weight to Dr. Canty's opinion" that Mr. Bezerra was "totally disabled."  (ECF No. 25 at 16).  In assigning little weight to the "treating and examining sources providing percentages

between 25% and 100% and claims of total or partial disability under Worker's Compensation" and to "statements indicating that [Mr. Bezerra] is temporarily total or partially disabled," the ALJ cited Dr. Canty's November 19, 2013 "Consultation Note" indicating, under the heading "Social History," that Mr. Bezerra is "100% disabled." (R. 20 (citing R. 272)). ALJ Hunt's failure to reference Dr. Canty by name does not warrant remand, since the ALJ Decision makes clear that he reviewed Dr. Canty's opinion and explained his basis for the weight accorded to it. See Williams v. Colvin, No. 13 Civ. 589 (DLI), 2014 WL 3725821, at *11 (E.D.N.Y. July 25, 2014) (rejecting the plaintiff's argument for remand based on the ALJ's failure to consider a physician's opinion that he was "100% disabled" where, even though the "ALJ did not mention [the physician] by name in the portion of his decision analyzing Plaintiff's RFC[,] . . . he indicated that he had reviewed [the physician]'s report when he cited to [it]" and explained "that he declined to give controlling or special weight to that finding because that conclusion is reserved to the Commissioner.").

ALJ Hunt's Decision to accord little weight to Dr. Canty's opinion as to Mr. Bezerra's disability was justified. (R. 20). As discussed, this opinion does not constitute a "medical opinion" under the SSA's regulations. (See supra § III.B.3.a). Moreover, like Dr. Ceja, Dr. Canty gave this opinion following his initial examination of Mr. Bezerra, i.e., before he could be considered a treating physician. (Id.; see R. 272). Accordingly, Dr. Canty's opinion was not entitled to any weight, much less controlling weight.

Mr. Bezerra's suggestion that the Record "is likely missing additional treatment records from Dr. Canty" does not warrant remand. (ECF No. 25 at 15 n.3). Initially, Mr. Bezerra's claim that the Record "only includes two treatment records from Dr. Canty, which appear in Dr. Seldes'

office treatment records" is not true.  (Id. (citing R. 477, 479)).  The Record reflects that, on November 17, 2015, Dr. Canty provided directly his notes from three visits: i) an initial consultation on November 19, 2013; ii) a follow-up visit the next day, November 20, 2013; and iii) a second follow-up visit on January 16, 2014.  (R. 271–86).

The Court has conducted a careful review and has not found any inconsistencies, gaps, or ambiguities with respect to Dr. Canty's records that would warrant remand.  20 C.F.R. §§ 404.1520b, 416.920b.  In a form submitted to the SSA on November 6, 2015 in connection with his DIB application, Mr. Bezerra listed Dr. Canty as a "health care professional who treated" him.  (R. 216).  Under the heading "Dates of Treatment," Mr. Bezerra indicated that his "First Visit" with Dr. Canty took place on November 19, 2013, and that his "Last Visit" was on January 16, 2014."  (R. 216).  Notably, in the field for "Next scheduled appointment (if any)," there is no date listed; only the letters "PRN" appear.  (R. 216).[7]  Dr. Canty's notes from the January 16, 2014 visit did not indicate a specific date for further follow-up; to the contrary, they reflect the following: "If the pain returns to greater than VAS 4/10 the patient was instructed to contact the office and we will consider further treatment options at that time." (R. 279). The Court found no evidence in the Record suggesting that Mr. Bezerra saw Dr. Canty after January 16, 2014.[8]

_____

[7] Although this acronym is not defined in the Record, the Court notes that "'PRN' is medical abbreviation meaning 'when necessary.'"  Medovich v. Colvin, No. 13 Civ. 1244 (GLS) (ESH), 2015 WL 1310310, at *7 (N.D.N.Y. Mar. 23, 2015).

[8] The Court notes that, in a treatment record dated June 29, 2015, Dr. Seldes wrote that Mr. Bezerra "has tried injection without relief with Dr. Kanty."  (R. 300). It is not clear from these notes when the referenced injection took place, or whether Dr. Seldes was referring to Dr. Canty.  However, this document pre-dates Mr. Bezerra's November 2015 filing with the SSA in which he indicated his last visit with Dr. Canty was on January 16, 2014.  (R. 216).  Accordingly, the Court is satisfied that Dr. Seldes' June 2015 notes do not suggest that Mr. Bezerra received additional treatment from Dr. Canty that was not accounted for in the Record.

\*                         \*                         \*

Accordingly, the Court finds that the ALJ correctly applied the Treating Physician Rule and that the ALJ Decision was supported by substantial evidence.

### IV.      CONCLUSION

For the reasons set forth above, Mr. Bezerra's Motion (ECF No. 24) is DENIED, and the Commissioner's Motion (ECF No. 30) is GRANTED.

The Clerk of Court is respectfully directed to close the Motions at ECF Nos. 24 and 30, and to close this case.

Dated:       New York, New York
             September 16, 2021

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**